***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to mis-joinder or non-joinder of parties.
4. Plaintiff sustained a compensable injury on February 9, 2006 when he was stabbed and struck on the head during an assault.
5. An employment relationship existed between plaintiff and defendant-employer during all relevant times.
6. Waffle House is a duly qualified self-insured employer. Brentwood Services is the servicing agent for the claim.
7. Pursuant to a Form 60, plaintiff has been paid at a compensation rate of $161.84 since February 10, 2006, based on an average weekly wage of $242.76. Plaintiff disputes this average weekly wage calculation as unfair and unjust pursuant to N.C. Gen. Stat. § 97-2(5).
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Industrial Commission Forms, Pleadings, and Orders
 (c) Stipulated Exhibit 3: Plaintiff's Medical Records *Page 3 
 (d) Stipulated Exhibit 4: Sheriff's Report, Discovery Responses, and Relief Manager Job Duties
 *********** ISSUES (a) Whether plaintiff's current psychological condition is causally related to his compensable injury by accident on February 9, 2006?
 (b) If so, whether plaintiff is entitled to attend a partial hospitalization program at Holly Hill Hospital?
 (c) How should plaintiff's average weekly wage be calculated pursuant to N.C. Gen. Stat. § 97-2(5)?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 24 years old and had a tenth grade education. Except for a two-month period when he worked at Food Lion, he has worked as a cook and sous chef in restaurants since he was 18 years of age. Prior to the injury by accident, plaintiff enjoyed an active lifestyle and had never had any mental health problems or treatment.
2. Plaintiff started working at the Waffle House in Fuquay-Varina in July 2005. He was hired as a full-time grill operator, which required him to cook food and handle the cooking area. He originally made $6.50 per hour in that position and received a raise to $6.85 per hour. *Page 4 
Plaintiff had an excellent attendance record and work habits and was often complimented on his work by his supervisors and co-workers.
3. Prior to the work related stabbing incident that is the subject of this claim, plaintiff was being trained as a relief manager. His supervisors had discussed promoting him to unit manager, but he had not been asked to complete a formal application. He was taught how to take inventory, make bank deposits, and conduct cash audits. As part of his training as a relief manager, he was given access to the computer containing financial information, which is only accessed by managers and he also received a description of the relief manager's duties from his head supervisor, Mitchell Duke.
4. Based upon the greater weight of the evidence of record, the Full Commission finds that if plaintiff had not been injured, he would have become a relief manager in the near future.
5. Plaintiff and Ann Duncan, a relief manager for defendant, testified that plaintiff would have initially earned $22,000.00 annually as a relief manager. To the contrary, Mr. Duke testified that had plaintiff been promoted from grill operator to relief manager, he would not have received a pay increase because there is no change in pay for such a promotion. The Full Commission is unable to reconcile the vast discrepancy in this testimony. Even if plaintiff had not been injured and remained a grill operator, he would have earned at least the $6.85 per hour he was earning at the time of his injury and his wages would have increased beyond this amount. A similar employee working as a grill operator made an average weekly wage of approximately $321.74. The Full Commission finds that additional evidence is necessary to fairly determine plaintiff's average weekly wage, including, but not limited to, additional evidence on the salary *Page 5 
of a relief manager and any evidence the parties may wish to present relating to methods three, four, and five of computing average wages under N.C. Gen. Stat. § 97-2(5).
6. On February 9, 2006, plaintiff went in to work at the Fuquay-Varina restaurant, but was called over to the Garner restaurant by Mr. Duke. The Garner unit manager had left days before. Mr. Duke, who had taken over the manager's duties, had just terminated an employee at that location and needed plaintiff's assistance in the aftermath. Plaintiff arrived and started running the grill operation.
7. Shortly thereafter, the boyfriend of the terminated employee came into the store and threatened Mr. Duke. The assailant walked behind the counter toward Mr. Duke. Plaintiff placed himself between the two men and attempted to calm the assailant down. Plaintiff was hit on his head twice with a frying pan or teapot but tried to restrain the assailant despite the disparity in their sizes. At the time of his injury, plaintiff was 5'6" and weighed 150 pounds whereas the assailant was over 6 feet tall and weighed approximately 250 pounds.
8. Dazed by the blows to his head, plaintiff tried to stop the assailant and was pushed into the back room. The assailant stabbed plaintiff with a knife. Plaintiff was wounded on his right upper shoulder, near his throat. The assailant held the blade to plaintiff's throat before releasing him. Bleeding profusely from the wound, plaintiff thought that he was going to die. After others tried to stop the bleeding, plaintiff was rushed to WakeMed Hospital by ambulance and went into surgery. An embolization procedure was done to stop the bleeding from plaintiff's shoulder and lacerations on his face were repaired. Thereafter, plaintiff underwent physical therapy to restore strength and motion in his right arm. He is right hand dominant.
9. Plaintiff was still experiencing a great deal of pain in his neck and shoulder in April 2006 and began treating with Dr. Robert Wyker, an orthopedic surgeon. Dr. Wyker *Page 6 
ordered an MRI and nerve conduction studies. These diagnostic procedures did not identify the source of plaintiff's pain. Dr. Wyker prescribed more physical therapy and cortisone injections. These treatments did not resolve plaintiff's pain.
10. Dr. Wyker found no reason to doubt plaintiff's complaints about pain. He saw no indication that plaintiff was being untruthful.
11. Following the incident and surgery, plaintiff began to experience severe emotional distress. At the time of his suture removal on February 23, 2006, he requested a referral to a psychologist because of his symptoms and was told to follow up at Wake County Mental Health. He suffered from frequent nightmares and spontaneous outbursts of anger. He had flashbacks recalling the stabbing. He had difficulty sleeping and felt paranoid and extremely anxious. Plaintiff did not exhibit any of these behaviors prior to the assault.
12. Following months of severe psychological symptoms, plaintiff was sent by defendant to Dr. Lisë Osvold, a psychologist who was then practicing at Pembroke Psychological Services. Beginning on June 22, 2006, Dr. Osvold saw plaintiff a total of nine times for her initial evaluation. She also spoke to his ex-girlfriend, father, and co-worker.
13. Dr. Osvold diagnosed plaintiff with chronic post-traumatic stress disorder (PTSD) and depressive disorder as a result of the stabbing incident in February 2006. Plaintiff's condition met all of the indicia of PTSD and major depression. Dr. Osvold rejected a diagnosis of malingering based on her thorough experience with plaintiff and the corroborating information provided by several other people.
14. Dr. Osvold began treatment of plaintiff on a weekly basis on September 14, 2006, providing therapy and using cognitive behaviorism treatments. Dr. Osvold's treatment has helped plaintiff, and he has shown some improvement. The Full Commission finds that Dr. *Page 7 
Osvold's treatment has been reasonably necessary to ameliorate the effects of the compensable injury, but is not sufficient.
15. On April 6, 2007, Dr. Osvold recommended the partial hospitalization program at Holly Hill Hospital in Raleigh, North Carolina because plaintiff requires more intensive treatment than can be provided in weekly sessions. Dr. Osvold restated her recommendation on July 9, 2007 and September 4, 2007. She is of the opinion that this recommended intensive treatment at Holly Hill is reasonably necessary to treat plaintiff's conditions that were caused by his work related stabbing.
16. In 2006 Dr. Osvold recommended psychiatric treatment for plaintiff, and defendants approved treatment by Dr. Lawrence Dunn, a board certified psychiatrist and specialist in chronic pain. Prior to entering private practice, Dr. Dunn practiced for 17 years at Duke University Medical Center and the Durham Veterans Administration Medical Center, and has treated many patients with PTSD and chronic pain.
17. Plaintiff has treated with Dr. Dunn on a biweekly basis since November 13, 2006. Dr. Dunn diagnosed Plaintiff with PTSD, depressive disorder, and chronic pain syndrome. Dr. Dunn initially treated plaintiff with anti-depressants and sleep medications. He then instituted pain medications to address plaintiff's chronic pain and drugs to treat plaintiff's PTSD. Dr. Dunn did not find plaintiff to be malingering and found him instead to be credible and consistent. Dr. Dunn also conducted a urine toxicology test and found no evidence that plaintiff was abusing either illegal drugs or his prescribed medications.
18. The Full Commission finds that Dr. Dunn's treatment has been reasonably and medically necessary to provide relief and lessen plaintiff's disability. Because of Dr. Dunn's treatment, plaintiff has been sleeping better and having fewer nightmares, angry outbursts, and *Page 8 
paranoid thoughts. Plaintiff's activities are also now less limited by pain. Dr. Dunn is of the opinion that plaintiff is totally unable to work due to his psychiatric conditions that resulted from the stabbing incident in February 2006.
19. Dr. Dunn agrees with Dr. Osvold's recommendation for intensive treatment at Holly Hill Hospital. It was his opinion that such treatment would be beneficial because more intensive care would give plaintiff a better chance of regaining function. Defendant refused to provide the partial hospitalization program recommended by Dr. Osvold and Dr. Dunn. Plaintiff filed a motion to compel this treatment, which was denied at the Executive Secretary level at the Industrial Commission on the grounds that this issue would be more appropriately addressed before a Deputy Commissioner.
20. On November 1, 2006, defendant sent plaintiff to Dr. Verne Schmickley for an independent psychological evaluation. Dr. Schmickley met with plaintiff for a single session. He agreed with the diagnoses of PTSD and depressive disorder, but felt that plaintiff was malingering because his presentation was so extreme. He did not believe plaintiff was disabled.
21. Defendant sent plaintiff to Dr. Gualtieri for an independent medical evaluation. Contrary to the findings of the other experts, Dr. Gualtieri did not diagnose plaintiff with PTSD. Rather, Dr. Gualtieri focused on the possibility that plaintiff was abusing drugs or alcohol. Dr. Osvold testified that she did not believe plaintiff was abusing drugs or alcohol, although she was aware that there were several occasions after the traumatic injury when plaintiff did abuse alcohol, but he stopped.
22. Greater weight is given to the opinions of Dr. Osvold and Dr. Dunn as plaintiff's authorized psychological treatment providers, than to the contrary opinions of Dr. Schmickley and Dr. Gualtieri who each saw plaintiff on one occasion for an independent medical evaluation. *Page 9 
Dr. Osvold reviewed the reports of Dr. Schmickley and Dr. Gualtieri and was aware of the areas where their opinions differed from her opinions when she testified at her deposition. She felt she was in a better position to know plaintiff's condition than Dr. Schmickley or Dr. Gualtieri. Dr. Dunn also reviewed the reports of Dr. Schmickley and Dr. Gualtieri and was aware of the areas where their opinions differed from his opinions when he testified at his deposition. Likewise, Dr. Dunn felt he was in a better position to evaluate plaintiff than Dr. Schmickley or Dr. Gualtieri due to the advantages he gained from spending more treatment time with plaintiff. At his deposition, Dr. Dunn continued to agree with the opinions he expressed in his September 9, 2007 "To Whom It May Concern" letter.
23. Based upon the opinions of Dr. Osvold and Dr. Dunn and the other competent and credible evidence of record, the Full Commission finds as fact that plaintiff has PTSD, depressive disorder and chronic pain syndrome and that plaintiff's psychological conditions and his chronic pain syndrome are causally related to his compensable injury by accident on February 9, 2006. The Full Commission further finds as fact that plaintiff is totally unable to work in any capacity due to his psychological conditions and his chronic pain syndrome that resulted from the stabbing incident in February 2006.
24. The Full Commission further finds as fact that the intensive treatment at Holly Hill recommended by Dr. Dunn and Dr. Osvold is reasonably necessary to treat plaintiff's psychological conditions that were caused by his work related stabbing.
25. Defendant brought this appeal before the Full Commission and the Full Commission by its decision herein is ordering defendant to provide the medical compensation ordered by the Deputy Commissioner. Plaintiff has requested that attorney fees be ordered as part of the bill of costs. *Page 10 
26. Defendant did not file a motion to stay the decision of the Deputy Commissioner pending appeal to the Full Commission. Plaintiff filed a motion to show cause and for immediate medical treatment. The Commission has not yet ruled on this motion, but finds herein that defendant should provide the recommended medical treatment at Holly Hill Hospital immediately.
27. Defendant has requested that plaintiff pay his share of the mediator's fee. This matter should be held in abeyance.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 9, 2006, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence of record establishes a causal relationship between plaintiff's injury by accident and his psychological condition, and thus this condition is compensable.
3. As a result of his compensable injury, plaintiff is entitled to temporary total disability compensation from February 9, 2006 and continuing until terminated by further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff's average weekly wage should be computed using a method that is fair to both plaintiff and defendant. Based on the record before the Full Commission there is insufficient evidence from which to compute average weekly wage and this matter should be reopened for additional evidence on this issue. N.C. Gen. Stat. § 97-2 (5). *Page 11 
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable injury and psychological condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the partial hospitalization program at Holly Hill Hospital recommended by Dr. Osvold and Dr. Dunn and/or other treatment as recommended by Dr. Osvold or Dr. Dunn. N.C. Gen. Stat. § 97-25.
6. Whether plaintiff is entitled to attorney fees under N.C. Gen. Stat. § 97-88 should be held in abeyance pending a final decision in this matter.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff from February 9, 2006 and continuing until further Order of the Commission. In the interim while the average weekly wage issue is pending, defendant shall continue to pay plaintiff compensation at the rate currently being paid. Defendant shall receive a credit for compensation already paid.
2. The record herein is hereby reopened for additional evidence on plaintiff's average weekly wage. The parties shall attempt to reach a stipulation within 10 days on plaintiff's average weekly wage. If the parties are unable to reach a stipulation, additional discovery on this issue, including depositions, is hereby authorized and shall be completed within 45 days. If the parties are unable to reach a stipulation after additional discovery, the parties shall notify the Full Commission and this matter will be referred to Chief Deputy Commissioner Wanda Blanche Taylor for assignment to a Deputy Commissioner for hearing on the average weekly wage issue. The Deputy Commissioner shall gather the evidence presented *Page 12 
and forward it to the Full Commission for a decision. Full Commission communication shall be directed to Bernadine S. Ballance, Commissioner.
3. Defendant shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable injury and psychological condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. Defendant shall immediately arrange and pay for the partial hospitalization program at Holly Hill Hospital recommended by Dr. Osvold and Dr. Dunn.
4. Dr. Dunn shall remain plaintiff's authorized treating physician and Dr. Osvold shall remain plaintiff's authorized treating psychologist.
5. A reasonable attorney's fee in the amount of twenty-five percent of any additional compensation due plaintiff as a result of an increased average weekly wage pursuant to the terms of this Opinion and Award is hereby approved for plaintiff's counsel, which shall be deducted from any back and future benefits due plaintiff and forwarded directly to plaintiff's counsel when the average weekly wage issue is resolved.
6. Plaintiff's request for attorney's fee pursuant to N.C. Gen. Stat. § 97-88 is held in abeyance. Defendant's request for payment by plaintiff of half of the mediation fee is also held in abeyance.
7. Defendant shall pay the costs due the Commission.
This the __ day of June 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ PAMELA T. YOUNG COMMISSIONER